**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SHERIKA WRIGHT,

        *Petitioner*,

 v.

MARKWAYNE MULLIN, *et al.,*

        *Respondents*.

**Case No. 2:26-cv-02114-NJC**

**PETITIONER'S MEMORANDUM OF LAW IN REPLY
TO THE RESPONDENTS' OPPOSITION TO
HER PETITION FOR A WRIT OF HABEAS CORPUS**

Jessica Coffrin-St. Julien
Nhu-Y Ngo
THE BRONX DEFENDERS
360 East 161st Street
Bronx, New York 10451
(646) 780-9930
jcoffrin@bronxdefenders.org
*Counsel for Petitioner*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 1

I.     Subjecting Ms. Wright to mandatory detention on the basis of unproven criminal allegations, without any pre-deprivation notice or opportunity to be heard, violates her due process rights.................................................................................... 1

     A.    This Court should apply the *Mathews* framework to assess the adequacy of the process afforded to Ms. Wright. .............................................................. 2

     B.    Application of the *Mathews* factors to Ms. Wright establishes that her detention on the basis of unproven allegations, without pre-deprivation notice or any opportunity to be heard, violates her due process rights. .............................. 4

         i.    Ms. Wright's weighty interest in being free from imprisonment is heightened because she is being held at a notorious facility intended for short-term detention, and because her mental health is suffering there. ......... 4

         ii.    Because Respondents purport to justify Ms. Wright's mandatory, detention with unproven criminal allegations, and because Ms. Wright was not afforded pre-deprivation notice or an opportunity to be heard, the risk of erroneous deprivation of her liberty is extremely high. ....................... 5

         iii.   Although Respondents have a legitimate interest in ensuring the appearance of noncitizens at immigration proceedings, they have not made a showing that Ms. Wright is a flight risk. .......................................... 8

CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Alcantara Guerrero v. Wesling*,
No. 1:26-CV-10928-JEK, 2026 WL 931503 (D. Mass. Apr. 6, 2026) ............................... 3, 5, 6

*Black v. Decker*,
103 F.4th 133 (2d Cir. 2024) ...................................................................... 1, 2, 3, 6

*Coffin v. United States*,
156 U.S. 432 (1895) ................................................................................................ 5

*D.C. v. Noem*,
No. 26 CIV. 1833 (PAE), 2026 WL 787895 (S.D.N.Y. Mar. 20, 2026) ................................... 5

*Demore v. Kim*,
538 U.S. 510 (2003) ............................................................................................... 3, 6

*Estelle v. Williams*,
425 U.S. 501 (1976) ................................................................................................ 6

*Garcia Ortiz v. Henkey*,
No. 1:26-CV-00043-BLW, 2026 WL 948275 (D. Idaho Apr. 7, 2026) ................................. 10

*Hernandez Lazo v. Noem*,
No. 2:25-CV-6639, 2026 WL 303430 (E.D.N.Y. Feb. 4, 2026) ................................................ 4

*J.M.P. v. Arteta*,
807 F. Supp. 3d 265 (S.D.N.Y. 2025) ...................................................................... 4

*Juan C.R.R. v. Bondi*,
No. 26-01282 (MJD/DJF), 2026 WL 752462 (D. Minn. Mar. 17, 2026) ................................. 7

*L.G.M. v. LaRocco*,
No. 25-CV-2631 (PKC), 2025 WL 2173577 (E.D.N.Y. July 31, 2025). ................................. 10

*Mathews v. Elridge*,
424 U.S. 319 (1976) ............................................................................................... 2, 4

*Matter of Joseph*,
22 I. & N. Dec. 799 (BIA 1999) ............................................................................ 7

*Mercado v. Noem*,
800 F. Supp. 3d 526 (2025) ................................................................................... 4

*Minarcaja Concha v. Lyons*,
   --- F. Supp. 3d ---, 2026 WL 215417 (E.D.N.Y. Jan. 28, 2026) ........................................ passim

*Munaf v. Geren*,
   533 U.S. 674 (2008) ................................................................................................................ 9

*Ndungu v. Freden*,
   No. 6:23-CV-06375 EAW, 2024 WL 5119825 (W.D.N.Y. Dec. 16, 2024) .............................. 5

*Nosirov v. Rife*,
   No. 2:26-CV-1534, 2026 WL 916602 (E.D. Pa. Apr. 1, 2026) ..................................... 1, 3, 6, 7

*Rodriguez-Acurio v. Almodovar*,
   811 F. Supp. 3d 274, 315–16 (2025) ............................................................................... passim

*Taylor v. Kentucky*,
   436 U.S. 478 (1978) ................................................................................................................ 5

*United States v. Doyle*,
   130 F.3d 523 (2d Cir. 1997) .................................................................................................... 6

*Velasco Lopez v. Decker*,
   978 F.3d 842 (2d Cir. 2020) ................................................................................................. 2, 4

*Vera-Velez v. Soto*,
   No. 26CV1480 (EP) (MAH), 2026 WL 963348 (D.N.J. Apr. 9, 2026) ................................. 10

**Statutes**
8 U.S.C. § 1226(a) ........................................................................................................................ 2
8 U.S.C. § 1226(c) ............................................................................................................... 1, 2, 3
8 U.S.C. § 1226(c)(1)(E) .............................................................................................................. 1
8 U.S.C. § 1226(c)(2) ................................................................................................................... 1
Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025) .................................................................... 2
N.Y. Penal Law § 155.30(1) ......................................................................................................... 1

**PRELIMINARY STATEMENT**

Petitioner, Sherika Wright ("Ms. Wright"), respectfully submits this memorandum of law in reply to Respondents' opposition to her Petition. *See* ECF No. 10, Resp'ts Opp. Subjecting Ms. Wright to mandatory detention based on unproven criminal allegations, without pre-deprivation notice or any opportunity to be heard, violates her due process rights. Respondents' contention that *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), forecloses a challenge to the application of the Laken Riley Act ("LRA") to Ms. Wright misreads *Black* and the Supreme Court precedent on which it rests. In light of Ms. Wright's interest in freedom from imprisonment, the substantial risk that she will be erroneously deprived of her liberty due to an unresolved arrest, and Respondents' failure to establish that she poses a flight risk or danger, the Court should order Ms. Wright's immediate release.

**ARGUMENT**

**I.     Subjecting Ms. Wright to mandatory detention on the basis of unproven criminal allegations, without any pre-deprivation notice or opportunity to be heard, violates her due process rights.**

Ms. Wright concedes that her arrest under N.Y. Penal Law § 155.30(1) falls within the scope of 8 U.S.C. § 1226(c)(1)(E), which calls for the mandatory detention of certain noncitizens who, as relevant here, are "arrested for . . . acts which constitute the essential elements of any . . . larceny offense . . . ." 8 U.S.C. § 1226(c)(1)(E); *see also id.* § 1226(c)(2) (defining "larceny" to "have the meaning[] given such term[] in the jurisdiction in which the act occurred"). However, the question remains "whether Congress may constitutionally require mandatory detention without bond where the asserted trigger is only an unresolved state accusation and where no individualized determination of dangerousness or flight risk has been made." *Nosirov v. Rife*, No. 2:26-CV-1534, 2026 WL 916602, at \*5 (E.D. Pa. Apr. 1, 2026). Application of the factors laid out in *Mathews v.*

*Elridge*, 424 U.S. 319 (1976), to Ms. Wright compels the conclusion that subjecting her to mandatory detention on the basis of unproven allegations, without pre-deprivation notice or an opportunity to be heard, violates her due process rights.

> **A.** **This Court should apply the *Mathews* framework to assess the adequacy of the process afforded to Ms. Wright.**

In this circuit, courts apply the *Mathews* balancing test to assess the adequacy of process afforded to petitioners challenging their civil immigration detention. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851, 855 (2d Cir. 2020) (in challenge to prolonged detention under 8 U.S.C. § 1226(a), applying the *Mathews* factors to conclude that the petitioner's detention violated due process); *Black*, 103 F.4th at 147–48 (in pre-LRA challenge to prolonged mandatory detention under 8 U.S.C. § 1226(c), applying the *Mathews* framework to determine the process due to the petitioner). Although a district court in this circuit has not yet reached the question of whether the LRA is constitutional as applied to a petitioner detained solely due to an unresolved arrest, courts, including this one, have employed *Mathews* in as-applied challenges to detention under § 1225(b)(2). *See, e.g.*, *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 315–16 (2025) (Choudhury, J.); *Minarcaja Concha v. Lyons*, --- F. Supp. 3d ---, 2026 WL 215417, at *15 (E.D.N.Y. Jan. 28, 2026) (Choudhury, J.).

Respondents' assertion that *Black* "forecloses" Ms. Wright's Petition misreads that case and the Supreme Court precedent on which it rests. Resp'ts Opp. 1. Respondents are correct that "*Black* summarized Supreme Court precedent holding that 'detention under [§] 1226(c) without an initial bond determination does not, on its face, violate the detainee's due process rights where detention is "for the limited period of . . . removal proceedings."'" *Id.* at 10 (quoting *Black*, 103 F.4th at 141). But the Second Circuit issued *Black* the year before Congress considered the LRA. *Compare* 103 F.4th at 133, *with* LRA, Pub. L. 119-1, 139 Stat. 3 (2025). And the Supreme Court

cases discussed in *Black*—namely, as relevant here, *Demore v. Kim*, 538 U.S. 510 (2003)—predated the LRA's passage by over two decades. *Demore* considered § 1226(c) "in the context of a noncitizen who had already been convicted of offenses that Congress identified as serious enough to justify detention during removal proceedings." *Nosirov*, 2026 WL 916602, at \*6 (citing *Demore*, 538 U.S. at 513, 517–21). The Court's decision rested on the "premise . . . that detention attached to a class of noncitizens whose criminal culpability had already been established . . . ." *Nosirov*, 2026 WL 916602, at \*6 (citing *Demore*, 538 U.S. at 518–21); *see also Alcantara Guerrero v. Wesling*, No. 1:26-CV-10928-JEK, 2026 WL 931503, at \*4 (D. Mass. Apr. 6, 2026) ("The Court looked in particular to Congress's finding that allowing discretionary release of noncitizens with criminal convictions 'pending their removal hearings would lead to large numbers . . . skipping their hearings and remaining at large in the United States unlawfully.'").

Ms. Wright's circumstances depart dramatically from those of the petitioner in *Demore*: "Respondents do not rely on a conviction," she "has not been adjudged guilty of the offense on which Respondents rely," and the government "seeks detention without bond solely because an accusation has been filed." *Nosirov*, 2026 WL 916602, at \*6. Further, "unlike the portion of [s]ection 1226(c) considered in *Demore*, the [LRA] does not contain comparable legislative findings to support the proposition that people arrested for or charged with—though not convicted of—any of the listed offenses pose a heightened danger to the community or a flight risk." *Alcantara Guerrero*, 2026 WL 931503, at \*4. Ms. Wright's detention, therefore, "is a materially different application of the detention power from the one approved in *Demore*" or considered in *Black*. *Nosirov*, 2026 WL 916602, at \*6. Further, *Demore* did not proscribe as-applied challenges to § 1226(c): indeed, *Black* is one such challenge. *See* 103 F.4th at 142. As such, Ms. Wright may contest the constitutionality of the LRA's expansive detention authority as applied to her.

3

**B.** **Application of the *Mathews* factors to Ms. Wright establishes that her detention on the basis of unproven allegations, without pre-deprivation notice or any opportunity to be heard, violates her due process rights.**

Here, all three *Mathews* factors—the private liberty interest at stake, the risk of erroneous deprivation and the value of additional safeguards, and the government's interest—weigh in Ms. Wright's favor. *See* 424 U.S. at 335.

        **i.** **Ms. Wright's weighty interest in being free from imprisonment is heightened because she is being held at a notorious facility intended for short-term detention, and because her mental health is suffering there.**

As to the first factor, which Respondents do not address in their briefing, *see* Resp'ts Opp. 7, Ms. Wright "invokes 'the most significant liberty interest there is—the interest in being free from imprisonment,'" *Rodriguez-Acurio*, 811 F. Supp. 3d at 316 (quoting *Velasco Lopez*, 978 F.3d at 851). The conditions of her confinement heighten that interest. Ms. Wright is currently being held at 26 Federal Plaza, *see* ECF No. 8-1, at 5, a facility intended for "short term—i.e., 12 hours at most—detention" that has been the subject of ongoing litigation due to poor conditions, *Mercado v. Noem*, 800 F. Supp. 3d 526, 556, 574 (2025); *see also id.* at 566–67 n.217 ("Multiple detainees have described severe trauma from their experience, including one who was hospitalized for suicidal ideation."). Being detained in a notoriously deplorable space intended for detention not exceeding twelve hours amplifies Ms. Wright's "interest in freedom from confinement." *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 290 (S.D.N.Y. 2025) (citing *Velasco Lopez*, 978 F.3d at 852); *see also Hernandez Lazo v. Noem*, No. 2:25-CV-6639, 2026 WL 303430, at *14–*15 (E.D.N.Y. Feb. 4, 2026) (Choudhury, J.) ("The fact that [the petitioner] was detained in such conditions for even part of his detention by [U.S. Immigration and Customs Enforcement, or 'ICE'] underscores why freedom from detention is a precious liberty afforded under the Due Process Clause of the Fourteenth Amendment to our Constitution.").

Ms. Wright's sudden detention has also caused her extreme distress, further heightening the liberty interest at stake. Over the weekend, Ms. Wright's removal defense counsel received a call from a clinician at Bellevue Hospital, who informed her that Ms. Wright had been taken to the facility for evaluation after expressing thoughts of self-harm. *See* Ex. A, Nora Searle Decl. ¶ 4 [hereinafter Searle Decl.]. Ms. Wright also reported to her counsel on April 13, 2026, that she has not been eating while detained. *Id.* ¶ 3. The deleterious impact of detention on Ms. Wright's mental health strengthens her interest in being free from confinement and reunited with the community of LGBTQ Jamaicans she has turned to for support since fleeing her home country. *See id.* ¶¶ 4, 6; *see also D.C. v. Noem*, No. 26 CIV. 1833 (PAE), 2026 WL 787895, at *7 (S.D.N.Y. Mar. 20, 2026) (discussing the petitioner's declining mental health in the liberty interest analysis); *Ndungu v. Freden*, No. 6:23-CV-06375 EAW, 2024 WL 5119825, at *3 (W.D.N.Y. Dec. 16, 2024) (in liberty interest analysis, noting that the petitioner's "individualized mental health concerns . . . make detention particularly difficult for him").

In sum, ICE's detention of Ms. Wright "infringe[s] on [her] weighty private interest in personal liberty." *Minarcaja Concha*, 2026 WL 215417, at *16.

> **ii.** **Because Respondents purport to justify Ms. Wright's mandatory, detention with unproven criminal allegations, and because Ms. Wright was not afforded pre-deprivation notice or an opportunity to be heard, the risk of erroneous deprivation of her liberty is extremely high.**

Here, "[t]he risk of erroneous deprivation is high because [Ms. Wright] is being detained based solely on an arrest and charge for which [s]he is presumed innocent." *Alcantara Guerrero*, 2026 WL 931503, at *5; *see also Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895))); *United States v. Doyle*, 130

F.3d 523, 535 (2d Cir. 1997) ("This presumption 'is a basic component of a fair trial,' . . . and derives from the Due Process clauses under the Fifth and Fourteenth Amendments of the Constitution . . . ." (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976))). Ms. Wright "has not been afforded the opportunity to contest [the] charge [against her] . . . ." *Alcantara Guerrero*, 2026 WL 931503, at *5. Indeed, because ICE detained Ms. Wright almost immediately following her criminal arrest, she has not even been arraigned; she was merely issued an arraignment ticket returnable to Nassau County First District Court—a ticket she will be unable to honor while detained. *See* ECF No. 10-1, at 1. As such, Ms. Wright has not been "offered 'the full procedural protections' of the criminal justice system." *Alcantara Guerrero*, 2026 WL 931503, at *5 (quoting *Demore*, 538 U.S. at 513); *see also Nosirov*, 2026 WL 916602, at *7 ("A conviction follows adversarial proceedings and an adjudication of guilt; a charge does not. A person who has been merely charged remains entitled to contest every element of the offense . . . ."). In short, "the state proceedings have not established criminal culpability." *Id.* Further, Respondents are not "required to prove that [Ms. Wright] poses a flight risk or is a danger to the community to keep her detained." *Alcantara Guerrero*, 2026 WL 931503, at *5; *see also Black*, 103 F.4th at 152 ("[T]he almost nonexistent procedural protections in place for section 1226(c) detainees markedly increase[] the risk of an erroneous deprivation of [p]etitioners' private liberty interests."); Resp'ts Opp. 7 n.4 ("As discussed in *Black*, there are few procedures for section 1226(c) detainees.").

Ultimately, "[w]ithout any congressional finding that noncitizens like [Ms. Wright] pose a heightened risk of flight or danger, the [R]espondents are relying solely on the fact that [s]he has been charged with an offense to keep [her] detained." *Alcantara Guerrero*, 2026 WL 931503, at *5. Under such circumstances—where Ms. Wright "has not been adjudged guilty of the offense on which Respondents rely, no immigration judge has found [her] dangerous or likely to flee, and

6

the [g]overnment seeks detention without bond solely because an accusation has been filed," *Nosirov*, 2026 WL 916602, at *6—the risk of erroneous deprivation of Ms. Wright's liberty interest is intolerably high. *See Juan C.R.R. v. Bondi*, No. 26-01282 (MJD/DJF), 2026 WL 752462, at *3 (D. Minn. Mar. 17, 2026) (finding the LRA unconstitutional as applied to petitioner and noting the court's "concern for [ICE's] use of unchecked, extensive detention authority based solely on a noncitizen's unproven criminal charges"). For this reason, Respondents' contention that Ms. Wright, should she desire procedural safeguards, can simply turn to an administrative hearing under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), or challenge her detention once it becomes unconstitutionally prolonged, rings hollow. *See* Resp'ts Opp. 7. A *Joseph* hearing would merely consider whether Ms. Wright's arrest causes her to be "properly included within one of the regulatory provisions that would" subject her to mandatory detention. 22 I. & N. Dec. at 799. But the sweeping scope of the LRA's text manifestly reaches Ms. Wright's arrest. *See* Point I, *supra*. And a challenge to prolonged detention under *Black* necessarily requires that Ms. Wright wait months to seek freedom from confinement when, for the reasons discussed *supra*, subjecting her to mandatory detention based on unproven allegations poses serious constitutional problems.

As to the value of proposed safeguards, "[t]here is little cost and significant benefit from providing the procedural safeguard of requiring that any detention be preceded by an individualized determination by a [Department of Homeland Security, or 'DHS'] officer as to whether [Ms. Wright] poses a flight or safety risk." *Minarcaja Concha*, 2026 WL 215417, at *17; *see also Rodriguez-Acurio*, 811 F. Supp. 3d at 317–18. Here, Ms. Wright was not afforded any meaningful process prior to her detention by ICE. DHS had previously released her on her own recognizance. *See* ECF No. 8-2, at 4–7 (exhibiting Order of Release on Recognizance, or "ROR Order," dated March 25, 2023). On April 9, 2026, ICE presented Ms. Wright with a document

stating, "This is notification that your previously issued Order of Release on Recognizance is cancelled because . . . [y]ou failed to comply with the conditions of your release." ECF No. 8-2, at 17. Although Respondents' briefing suggests that Ms. Wright violated the condition requiring that she not "commit any crime," Resp'ts Opp. 2, the revocation notice itself does not specify what conditions Ms. Wright allegedly violated, *see* ECF No. 8-2, at 17. Further, the document was only served on Ms. Wright after her arrest. *See* ECF No. 8-1, at 4–5 (stating that Ms. Wright was served during "post-arrest" processing); *see also Minarcaja Concha*, 2026 WL 215417, at *17 (noting that the petitioner was not served with any document that accused him of violating the terms of his release, "much less one that was prepared before ICE arrested and detained him"). In any event, to the extent that Respondents rely on Ms. Wright's arrest to assert that she violated the terms of her ROR Order, this argument is unpersuasive because the arrest "has not resulted in any resulted disposition, much less a conviction." *Id.* Consequently, Respondents have not offered "any . . . basis for concluding that [Ms. Wright's] arrest[] constituted a violation of the ROR, nor any indication that the arrest[] suggested that [s]he was a flight or public safety risk." *Id.*

In sum, "ICE's detention of [Ms. Wright] without any notice or opportunity to be heard . . . establishes a high risk of erroneous deprivation of [her] protected liberty interest . . . ." *Id.* at *18.

### iii. Although Respondents have a legitimate interest in ensuring the appearance of noncitizens at immigration proceedings, they have not made a showing that Ms. Wright is a flight risk.

Respondents assert that they have an interest "in ensuring Petitioner's appearance at her removal proceedings to properly adjudicate her removal, and ensuring she is removed if that is the outcome of his [*sic*] removal proceedings." Resp'ts Opp. 7. Yet Respondents' own evidence indicates that Ms. Wright has consistently appeared for her removal proceedings. Prior to retaining counsel, Ms. Wright attended her first master calendar hearing in immigration court pro se. *See*

ECF No. 8-1, at 3. Thereafter, she retained pro bono counsel from The Bronx Defenders. *See id.*; *see also* Searle Decl. ¶ 2. With their support, she filed an application for asylum, withholding of removal, and protection under the Convention Against Torture and attended a subsequent master calendar hearing. *See* Pet. ¶ 28; ECF. No. 8-1, at 3. Ms. Wright has been preparing diligently for her upcoming individual hearing and will continue to benefit from the support of The Bronx Defenders, including its social work team, if released. *See* Searle Decl. ¶¶ 6–7.[1]

Ultimately, considering all of the *Mathews* factors—"the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that [Ms. Wright's] detention was required to advance any legitimate government interest in ensuring appearance at removal proceedings or preventing danger to the community"—Respondents' detention of Ms. Wright "with no notice or opportunity to be heard" violates her Fifth Amendment right to procedural due process. *Minarcaja Concha*, 2026 WL 215417, at *18.

## IV. The appropriate remedy for Ms. Wright's detention without any pre-deprivation process is immediate release.

"Release from detention is the 'typical remedy' for 'unlawful executive detention.'" *Rodriguez-Acurio*, 811 F. Supp. 3d at 319 (quoting *Munaf v. Geren*, 533 U.S. 674, 693 (2008)). A bond hearing "would not remedy the core constitutional violation at issue" because "the detention without adequate pre-deprivation procedures has already been carried out." *Rodriguez-Acurio*, 811 F. Supp. 3d at 319–20; *see also Minarcaja Concha*, 2026 WL 215417, at *18–*19 (ordering immediate release of petitioner with criminal history).

---

[1] Respondents do not appear to advance the argument that the government's interest in protecting public safety justifies Ms. Wright's detention. *See* Resp'ts Opp. 7. Indeed, they would be hard-pressed to defend such an argument, as the only evidence they have offered on this front is an arrest report alleging nonviolent conduct—an insufficient basis to establish that Ms. Wright poses a risk to public safety. *See Minarcaja Concha*, 2026 WL 215417, at *18 (for petitioner with two arrests, one of which had been dismissed and one for which the resolution was unclear, finding that there was "absolutely nothing in the record showing that [he was] a flight risk or danger to the community").

Further, were the Court to order a bond hearing, that relief could prove illusory due to pressure on immigration judges ("IJ") to deny bond. In reporting by the *New York Times*, a current IJ said that "the pressure to deny bond is overt." Ex. B, Nicholas Nehamas et al., *How Trump Purged Immigration Judges to Speed Up Deportations*, N.Y. Times (Apr. 9, 2026), at 19. *Politico* has similarly reported that bond hearings "have been fundamentally flawed or even pre-cooked, designed to result in findings of 'danger to the community' or 'flight risk' without a fair consideration of the evidence." Ex. C, Kyle Cheney, *Judges Keep Ordering Immigration Hearings—But Say the Results Are Often a Sham*, Politico (Mar. 6, 2026), at 1; *see also, e.g.*, Ex. D, Julie Manganis, *Judge Presses DOJ on Immigrant Bond Denials After Report*, Law 360 (Apr. 10, 2026), at 1 (reporting that Judge Patti Saris said "she is 'worried' that the immigration court . . . is simply denying all requests for bond automatically"); *Vera-Velez v. Soto*, No. 26CV1480 (EP) (MAH), 2026 WL 963348, at *3 (D.N.J. Apr. 9, 2026) (noting that "[t]he evidence submitted by the [p]etitioner suggests that [IJs] are being appointed or pressured to find in favor of detention"); *Garcia Ortiz v. Henkey*, No. 1:26-CV-00043-BLW, 2026 WL 948275, at*3 (D. Idaho Apr. 7, 2026) (observing that, "given the broader irregularities in bond hearings across the country . . . administrative remedies in the immigration system appear no longer efficacious").

Consequently, "'disposing of the matter as law and justice require' necessitates [Ms. Wright's] release . . . ." *Rodriguez-Acurio*, 811 F. Supp. 3d at 320 (quoting 28 U.S.C. § 2243).[2]

### CONCLUSION

Petitioner respectfully requests that the Court order that she be released from custody.

---

[2] If the Court declines to order Ms. Wright's release, it should order robust protections to ensure that any bond hearing is as fair as possible. Namely, the Court should order that the government bear the burden of establishing danger and flight risk by clear and convincing evidence, that the IJ consider alternatives to detention in evaluating both danger and flight risk, and that the IJ consider ability to pay in setting any bond amount. *See* Pet. ¶¶ 80-91; *see also L.G.M. v. LaRocco*, No. 25-CV-2631 (PKC), 2025 WL 2173577, at *3 (E.D.N.Y. July 31, 2025).

Dated: April 14, 2026
Bronx, New York

Respectfully submitted,

/s/ Jessica Coffrin-St. Julien
Jessica Coffrin-St. Julien, Esq.
Nhu-Y Ngo, Esq.
The Bronx Defenders
360 East 161st Street
Bronx, New York 10451
Tel. 646-780-9930
jcoffrin@bronxdefenders.org
*Counsel for Petitioner*

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the 3,500-word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,498 words.